[Cite as *Kirin v. Kirin*, 2011-Ohio-663.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KIMBERLY D. KIRIN nka SHAMP | ) | CASE NO. 08 MA 243 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| VICTOR J. KIRIN | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas , Domestic Relations Division, of Mahoning County, Ohio
Case No. 07 DR 205

JUDGMENT:      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:      Kimberly Kirin nka Shamp, Pro se
8425 Weather Wood Trail
Poland, Ohio  44514


For Defendant-Appellant:      Atty. Douglas A. King
Hartford, Dickey & King Co., LPA
91 West Taggart Street
P.O. Box 85
East Palestine, Ohio  44113


JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated:  February 9, 2011

WAITE, P.J.

**{¶1}** Appellant, Victor J. Kirin, appeals the judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, holding him in contempt for failure to pay child and spousal support and imposing a sentence of thirty days in the Mahoning County Jail. No response brief was filed. For the following reasons, the judgment entry of the domestic relations court is affirmed.

**{¶2}** The marriage of Appellant and Appellee, Kimberly D. Kirin nka Shamp, was terminated by a judgment entry of divorce dated February 6, 2008. Pursuant to a separation agreement, Appellant, a self-employed commercial truck driver, was ordered to pay child support in the amount of $292.08 per month for each of the parties' two children, plus $700.00 in spousal support for 66 months, for a total support obligation of $1,284.16 per month, commencing on January 1, 2008. (7/22/08 Tr., p. 3.)

**{¶3}** On April 2, 2008, Appellee filed a motion to show cause why Appellant should not be held in contempt for failing to execute a quit claim deed to the marital residence as ordered in the divorce decree. As a result of the show cause motion, the child support enforcement agency suspended Appellant's commercial driver's license on April 30, 2008. The matter was resolved without a hearing, and, on May 8, 2008, the domestic relations court reinstated Appellant's commercial driver's license.

**{¶4}** Two days prior to the resolution of the first show cause motion, on May 6, 2008, Appellee filed a motion to show cause why Appellant should not be held in contempt for failure to pay child and spousal support, the issue in this appeal. At the hearing on the motion, conducted on July 22, 2008, Appellee established an

arrearage of $3,783.35. Appellant made no payments in January, March and April, but made a $1,783.92 payment in February, a $362.73 payment in May, and a $1,782.83 payment in June. (7/22/08 Tr., pp. 14-15.)

{¶5} At the hearing, Appellant testified that he has been a commercial truck driver for approximately thirty years. (7/22/08 Tr., p. 32.) According to his testimony, he was making $200,000 a year, but he lost his primary hauling contract in January of 2008 to another driver who underbid him. (7/22/08 Tr., p. 23.) Appellant testified at the hearing that he, "couldn't afford to run the truck, fix the truck, pay for all the attorneys and everything else." (7/22/08 Tr., p. 23.)

{¶6} Although Appellant had found new employment with Wiedmeyer Express on April 1, 2008, he quit that job the day before the show cause hearing, because the trucking company allegedly breached a promise to him to sell him a truck, and he was only clearing $84.00 a week after paying his child support. (7/22/08 Tr., pp. 19-20.) Later in his testimony, he stated that sometimes he would clear $200 a week after child support. (7/22/08 Tr., p. 26.) He testified that he quit the job with Wiedmeyer in order to have time to find another job, and because he could not afford to support himself with his wages from Wiedmeyer.

{¶7} Appellant claimed that his age, 47, and his lack of computer skills, which are now considered a necessity by trucking companies, severely limited his employment options. (7/22/08 Tr., pp. 32-33.) He further testified that he was destitute, and that the only utility he was able to maintain at his residence was water. (7/22/08 Tr., p. 26.)

**{¶8}** Appellant testified that he was actively seeking employment at the time of the hearing. He stated however, that without his own truck he could not earn the same wage that he had earned in the past. (7/22/08 Tr., p. 27.) He further testified that he and Shamp were living beyond their means during their marriage, because they were not paying taxes. Apparently, his wages from Wiedmeyer were subject to withholding for social security and taxes.

**{¶9}** Finally, Appellant argued that the arrearage should be offset by substantial overpayments he made pursuant to the temporary support order, which was entered during the pendency of the divorce proceeding. Appellant claimed that the calculation of his temporary support payments failed to factor in his truck and trailer payments. (7/22/08 Tr., p. 5.) At the hearing, the magistrate informed him that the temporary support order was not properly before the court, and that his recourse with respect to the temporary support order was to file an appeal. (7/22/08 Tr., p. 11.)

**{¶10}** According to Appellee, Appellant stopped working in January of 2008 out of spite. She testified that Appellant threatened to give up his truck and quit his job at a hearing on December 26, 2007, and that, "[w]ithin less than 15 days he did." (7/22/08 Tr., p. 30.) Appellant claimed that he made that statement when he was told he could not gain custody of his children because of his profession. (7/22/08 Tr., pp. 30-31.) Both attorneys were present when Appellant made the statement at the hearing, but neither attorney remembered the exact context of the statement.

**{¶11}** Appellant's attorney, David Gerchak, represented to the magistrate that he intended to file a motion to modify support on the day of the hearing. The motion was not resolved prior to this appeal.

**{¶12}** The magistrate concluded that Appellee had established Appellant's contempt by clear and convincing evidence, and rejected Appellant's defense that he was not voluntarily unemployed. However, the magistrate permitted Appellant to purge the contempt by immediately resuming his support obligation, paying an additional $15.84 toward his arrearage, immediately seeking employment and providing proof of five applications to prospective employers at the next hearing, and paying reasonable attorney fees in the amount of $275 plus $100 in court costs to Appellee. A second hearing was set for October 20, 2008. In the event that Appellant failed to purge the contempt by that date, the magistrate recommended a thirty-day jail sentence. (7/28/08 Magistrate's Decision, p. 4.)

**{¶13}** Appellant filed objections to the magistrate's decision, but did not file a transcript of the hearing. Hence, the domestic relations court adopted the magistrate's decision without consideration of the evidence offered at the hearing. Appellant argued in his objections that he was not voluntarily unemployed. The judgment entry was issued on October 3, 2008.

**{¶14}** At the October 20, 2008 hearing, the arrearage had increased to $6,367.37. Appellant testified that he had submitted an application for employment with an independent truck owner and a drug test was scheduled later that same day, but that the employer was reluctant to hire him since he might be going to jail.

(10/20/08 Tr., pp. 5-6.) Appellant also claimed that he had applied for a job with Ludt's Towing, where he would make $500 to $700 dollars a week. He testified that every company he applied to refused to hire him because his license was suspended for being in arrears. (10/20/08 Tr., pp. 6-7.) He claimed that he will never earn the same amount of money that he formerly earned. As of the October 20, 2008 hearing, Appellant testified that his water had been shut off, he had no car, and his motorcycle had been repossessed. (10/20/08 Tr., p. 6.) He testified that friends and relatives were bringing him food and cigarettes.

**{¶15}** The magistrate found that Appellant failed to purge his contempt, and recommended a thirty-day jail sentence, but provided him an additional 45 days to make a lump sum payment of $3,900.00, representing child and spousal support due for the previous three months. (10/23/08 Magistrate's Decision, p. 5.)

**{¶16}** Appellant did not file any objections to the Magistrate's decision issued on October 23, 2008. Based upon Appellant's failure to meet the purge conditions, the domestic relations court imposed a sentence of 30 days in the Mahoning County Jail. (11/13/08 J.E., p. 5.) Appellant was ordered to present himself to the jail on December 19, 2008, unless he made a lump sum payment of $4,000.00, representing the support arrearage that had accumulated during the previous three months. The sentence was stayed pending this timely appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

**{¶17}** "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING DEFENDANT/APPELLANT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT AND/OR SPOUSAL SUPPORT."

**{¶18}** Civ.R. 53(D)(3)(b)(iv), captioned, "[w]aiver of right to assign adoption by court as error on appeal," reads, in its entirety, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Consequently, we review the judgment entry on appeal for plain error.

**{¶19}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, at paragraph one of the syllabus.

**{¶20}** In *Goldfuss*, the Ohio Supreme Court explained that the doctrine should only be applied in extremely unusual circumstances where the error complained of, if left uncorrected, would have a material adverse effect on the character of and public confidence in judicial proceedings. Id. at 121, 679 N.E.2d 1099. The Court

concluded that the public's confidence is rarely upset merely by forcing civil litigants to live with the errors they themselves or the attorney chosen by them have committed. Id. at 121-122, 679 N.E.2d 1099.

**{¶21}** The burden of proof for the moving party in a civil contempt action is clear and convincing evidence. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253, 416 N.E.2d 610. After the moving party establishes a prima facie case of contempt by showing evidence of nonpayment according to the terms of a dissolution decree, the burden shifts to the nonmoving party to establish a defense for nonpayment. *Morford v. Morford* (1993), 85 Ohio App.3d 50, 55, 619 N.E.2d 71.

**{¶22}** The nonmoving party must then prove any defense by a preponderance of the evidence. *Jeffers v. Jeffers*, 7th Dist. No. 07 BE 36, 2008-Ohio-3339, ¶15. "The preponderance of the evidence standard simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." (Internal citations omitted.) *Crick v. Starr*, 7th Dist. No. 08MA173, 2009-Ohio-6754, ¶35.

**{¶23}** At the show cause hearing, Appellant argued that his prospects for employment in the trucking industry were limited due to his age and his lack of computer skills. After losing his long-time trucking job, Appellant was unemployed for three months, until he found work as a truck driver with Wiedmeyer. According to his testimony, he left that job after less than three months because he was mislead about

his prospects of owning his own truck, and could not support himself on his wages. As of the purge hearing held on October 20, 2008, Appellant still had not found a job.

**{¶24}** Appellee testified that Appellant left his long held trucking job voluntarily, after threatening to do so during the divorce proceedings in retaliation for failing to get custody of his children.

**{¶25}** Appellant contends that he is not voluntarily unemployed. However, the magistrate and the domestic relations court did not credit Appellant's explanation for his financial situation, and the trial court is in the best position to view the demeanor, attitude, and credibility of the witnesses. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273.

**{¶26}** Based upon the foregoing facts and law, this case does not present the extremely rare or exceptional circumstances contemplated by the plain error rule. Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

**{¶27}** "THE TRIAL COURT'S PURGE CONDITIONS WERE UNREASONABLE."

**{¶28}** A trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet. *Pavlic v. Barium & Chemicals, Inc.*, 7th Dist. No. 02 JE 33, 2004-Ohio-1726, ¶71. The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis. Id. The contemnor must present sufficient evidence at the contempt

hearing that the trial court's purge conditions are unreasonable or impossible for the contemnor to meet. Id.

{¶29} At the October 20, 2008 hearing, Appellant did not object to the purge conditions set forth by the magistrate, and he did not file any objections to the October 23, 2008 judgment entry. Although the purge condition in this case involved a substantial amount of money, the circumstances presented are not the extremely rare or extraordinary circumstances contemplated by the civil rule. Accordingly, Appellant's second assignment of error is overruled and the judgment of the domestic relations court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.